UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

PHILIP COLASUONNO,

                Defendant.
------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 10877 (JCM)

Plaintiff the United States of America ("Plaintiff") commenced this action on December 20, 2021, pursuant to 26 U.S.C. § 7401, seeking a judgment for unpaid tax penalties levied on Defendant Philip Colasuonno ("Defendant") under 26 U.S.C. § 6682. (Docket No. 1).[1] Defendant now moves to dismiss the Complaint with prejudice and for judgment on the pleadings, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), respectively. (Docket Nos. 17-18). Plaintiff opposes the motion, (Docket No. 19), and Defendant replied, (Docket No. 20). For the reasons set forth herein, Defendant's motion is denied.

**I. BACKGROUND**

Plaintiff seeks to collect tax penalties assessed against Defendant for willfully failing to collect, account for and remit to the federal government Social Security, Medicare and income taxes for employee wages over a four-year period in accordance with federal law. Defendant was a one-third owner of American Armored Car Ltd. ("AAC") from 2001 through 2005.

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 15).

(Docket No. 1 ¶¶ 6, 20).[2] As partial owner, he "exercised authority and control over AAC's financial affairs, including but not limited to the collection, truthful accounting, and paying over of employment taxes for its employees." (Docket No. 1 ¶ 6). Federal law requires employers, like AAC, to withhold and remit Social Security, Medicare, unemployment and income taxes from their employees' wages, and to report such holdings to the Internal Revenue Service ("IRS"). (Docket No. 1 ¶¶ 7-8); 26 U.S.C. §§ 3102, 3301, 3402. Moreover, employers must place the withheld funds in a "special fund in trust for the benefit of the United States." (Docket No. 1 ¶ 9); 26 U.S.C. § 7501. Failing to hold the funds in a special trust fund subjects the employer to a trust fund recovery penalty "assessed against a responsible person of the employer in an amount equal to the trust fund taxes that the employer did not collect or remit from the employees' wages." (Docket No. 1 ¶ 11); 26 U.S.C. § 6672(a).

During nineteen quarterly tax periods spanning from June 30, 2001 through December 31, 2005, AAC "failed to collect, truthfully account for and remit to the United States" the Social Security, Medicare and unemployment taxes that it was required to under federal law. (Docket No. 1 ¶ 18).[3] Defendant, who was a Certified Public Accountant at the time, "was involved in [AAC's] preparation of financial statements." (Docket No. 1 ¶ 20). Defendant paid, or caused to be paid, AAC's employees in cash during the tax periods at issue without withholding or otherwise accounting for the appropriate taxes or remitting such taxes to the IRS. (Docket No. 1 ¶ 21). Instead,

---

[2] The Court accepts as true the facts set forth in Plaintiff's Complaint for purposes of resolving the motion to dismiss. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014).

[3] The tax periods are the quarterly periods ending on June 30, 2001, September 30, 2001, December 31, 2001, March 31, 2002, June 30, 2002, September 30, 2002, December 31, 2002, March 31, 2003, June 30, 2003, September 30, 2003, December 31, 2003, March 31, 2004, June 30, 2004, September 30, 2004, December 31, 2004, March 31, 2005, June 30, 2005, September 30, 2005 and December 31, 2005. (Docket No. 1 ¶ 18).

> Defendant wrote and caused to be written weekly checks made payable to a third-party company, FJC Security Services, Inc. ("FJC"), representing cash payroll to be made to employees of AAC, even though AAC had no ongoing business relationship with FJC during the Covered Tax Periods and the sole purpose of the checks made out to FJC was to cover up and disguise the payment of cash payroll to employees of AAC. AAC would account for cash payroll to its employees in its books and records as payments for "outside services" when in fact, as Defendant knew and understood, these payments were not for "outside services" but were cash payments to employees of AAC.

(Docket No. 1 ¶ 22).

On June 18, 2007, Defendant pleaded guilty to a two-count Information charging him with conspiracy to commit tax fraud, in violation of 18 U.S.C. § 371, and aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). (Docket No. 1 ¶ 23); *see* Minute Entry, *United States v. Colasuonno*, No. 07 Cr. 555 (AKH) (S.D.N.Y. June 18, 2007). During his plea allocution, Defendant admitted to the criminal conduct as described above. (*See* Docket No. 1 ¶¶ 23-24). Judge Hellerstein sentenced Defendant to time-served, to be followed by five years of supervised release on count one to be served concurrently with five years of probation on count two, along with restitution in the amount of $781,467.00. No. 07 Cr. 555 (AKH), Judgment (Docket No. 7). Defendant thereafter violated the conditions of his probation by failing to make a good faith effort to make restitution payments and was sentenced to a four-month prison term. (Docket No. 1 ¶ 26); No. 07 Cr. 555 (AKH), Order Imposing Sentence (Docket No. 31).

Defendant filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on July 24, 2009. (Docket No. 1 ¶ 29); *see In re Maria and Philip Colasuonno*, No. 09-23330-rdd (Bankr. S.D.N.Y.). On April 21, 2011, while the bankruptcy case was pending, the IRS assessed penalties for the nineteen quarterly tax periods Defendant did not remit payment, in the

total amount of $1,747,190.30. (Docket No. 1 ¶ 27).[4]  On May 26, 2011, the IRS issued a Notice of Federal Tax Lien ("NFTL"), which was filed with the Westchester County Clerk on June 8, 2011. (Docket No. 19 at 1).  On July 20, 2011, the Bankruptcy Court entered a discharge in Defendant's bankruptcy action. (Docket No. 1 ¶ 30).  Plaintiff commenced this action on December 20, 2021. (Docket No. 1).

## II.  LEGAL STANDARDS

Rule 12(c) of the Federal Rules of Civil Procedure allows "a party [to] move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  "In deciding a Rule 12(c) motion, [the Court] 'employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6).'" *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir.2009) (per curiam)).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Courts undertake a "'two-pronged approach' to evaluate the sufficiency of a complaint." *Hayden*, 594 F.3d at 161.  First, the court must accept all of the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) ("On a motion to dismiss . . .  we must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.") (citations and internal quotation marks omitted).  The facts alleged must be more

---

[4] Plaintiff states that, "[a]s of November 30, 2021, Defendant owes more than $2,490,889.32 on these penalties, including interest." (Docket No. 1 ¶ 34).

than legal conclusions. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration and citation omitted)).  In evaluating the complaint, a court considers "any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

Second, the court must determine whether the allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556).  Determining whether a complaint states a plausible claim to relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  If a plaintiff has "not nudged their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III.   DISCUSSION

Defendant does not deny that he was responsible under the law to collect, truthfully account for and pay over AAC's employment taxes, or that he willfully failed to pay over such taxes. *See, e.g., United States v. Rowe*, 858 F. App'x 405, 406 (2d Cir. 2021) (summary order); *see also* 26 U.S.C. § 6672.  Instead, Defendant maintains that he is entitled to judgment on the pleadings because the Complaint was not timely filed.  Specifically, Defendant states that the IRS willfully violated the Bankruptcy Code's prohibition against actions taken to collect on an

assessment by filing the NFTL in Westchester County during the pendency of the bankruptcy proceedings. (Docket No. 18 at 3-4).  Plaintiff counters that: (1) the IRS's filing of an NFTL during the pendency of Defendant's bankruptcy proceedings has no bearing on whether the statute of limitations was tolled during that time; and (2) the action was timely filed. (Docket No. 19 at 5).  Plaintiff further asserts that any remedy for an alleged violation of an automatic stay should be brought before the bankruptcy court pursuant to the Bankruptcy Code, 11 U.S.C. § 362(k). (*Id*. at 5-6).  The sole issue for this Court to resolve is whether the statute of limitations expired before this action was filed.

**A.  The Action Was Timely Filed**

The Internal Revenue Code provides that a "civil action for the collection or recovery of taxes, or of any fine, penalty, or forfeiture, shall be commenced [if] the Secretary authorizes or sanctions the proceedings and the Attorney General or his delegate directs that the action be commenced." 26 U.S.C. § 7401.  Where authorized, an action for collection of a tax assessment must be filed "[w]ithin 10 years after the assessment of the tax." 26 U.S.C. § 6502(a)(1) ("Section 6502").  However, that time period is "suspended for the period during which the [IRS] is prohibited by reason of [a bankruptcy proceeding brought under Chapter 11 of the United States Code] … from collecting and… for… 6 months thereafter." 26 U.S.C. § 6503(h)(2) ("Section 6503").  In other words, when the assessment is filed after the bankruptcy proceeding begins, "Plaintiff ha[s] ten years and six months from the date Defendant was discharged from bankruptcy… to begin collection proceedings." *United States v. Griffin*, 19-CV-4821 (ERK) (PK), 2020 WL 6993893, at *2 (E.D.N.Y. Sept. 15, 2020), *report and recommendation adopted*, 2020 WL 6955625 (E.D.N.Y. Nov. 25, 2020).

Here, the IRS assessed penalties for the nineteen tax periods at issue on April 21, 2011. (Docket No. 1 ¶ 27).[5]  Under Section 6502, Plaintiff would typically have had ten years, or until April 21, 2021, to "collect[] [assessed taxes] by levy" or commence "a proceeding in court" to collect assessed taxes. *See* 26 U.S.C. § 6502(a)(1).  However, because Defendant filed for bankruptcy on July 24, 2009, Section 6503's tolling provision applies.  The bankruptcy court entered a discharge in Defendant's bankruptcy proceeding on July 20, 2011. (Docket No. 1 ¶ 30). Plaintiff therefore had ten years and six months from July 20, 2011—until January 20, 2022—to commence "a proceeding in court" to collect assessed tax penalties. 26 U.S.C. § 6503; *see Griffin*, 2020 WL 6993893, at *2.  Plaintiff filed the instant Complaint on December 20, 2021. Therefore, this collection action is timely.

**B. The NFTL**

Nevertheless, Defendant argues that this action is untimely because Plaintiff "violated the bankruptcy stay" by filing the NFTL, and this violation prohibits the relief afforded by Section 6503's tolling provisions. (Docket No. 18 at 3-4).  Plaintiff counters that, even assuming, *arguendo*, that the NFTL constituted a violation of the automatic stay, this has no bearing on whether a bankruptcy proceeding tolls the statute of limitations for bringing a collection action. (Docket No. 19 at 5-6).  The Court agrees.

**1. The NFTL Is a Public Record And Can Be Considered**

As a preliminary matter, Defendant's argument is entirely predicated on the NFTL appended to his motion.  Because Plaintiff does not reference or incorporate the NFTL in the Complaint, the Court must first determine if it can consider the NFTL in deciding the motion to dismiss.  It is the general rule that courts "do not consider matters outside the pleadings in

---

[5] It is undisputed that the IRS did not violate the stay by making the assessments. (Docket No. 19 at 3-4; Docket No. 20 at 1). *See* 11 U.S.C. § 362(b)(9)(D).

deciding a motion to dismiss for failure to state a claim." *Nakahata v. N.Y.-Presbyterian Healthcare Sys.*, 723 F.3d 192, 202 (2d Cir. 2013); *see* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56 … [and] [a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). However, the Second Circuit has held that a court "may also look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also Hill v. DLJ Mortg. Cap., Inc.*, 15-CV-3083 (SJF) (AYS), 2016 WL 5818540, at *6 (E.D.N.Y. Oct. 5, 2016), *aff'd*, 689 F. App'x 97 (2d Cir. 2017) ("Courts may also consider public records in deciding a motion to dismiss.") (collecting cases).

      When a taxpayer neglects or refuses to pay taxes after a demand, a statutory lien arises in favor of the United States upon the taxpayer's property and rights to property at the time the assessment is made. *See* 26 U.S.C. §§ 6321 ("Section 6321"), 6322; *In re Berg*, 188 B.R. 615, 618 (B.A.P. 9th Cir. 1995), *aff'd*, 121 F.3d 535 (9th Cir. 1997) ("A tax lien in favor of the United States arises by operation of law if a person is unable to pay a tax liability after demand for payment is made."). Under Section 6321, a "lien in favor of the United States is created *automatically* whenever a tax delinquency occurs. The lien exists and is enforceable against the taxpayer regardless of whether the IRS chooses to file notice of it." *In re Bourque*, 123 F.3d 705, 706 (2d Cir. 1997). The NFTL simply serves to preserve the priority of the government's lien relative to other, third-party creditors. *See* 26 U.S.C. § 6323; *see also In re Bourque*, 123 F.3d at 706 ("Notice has its own quite different function. It neither creates the deficiency nor confirms the underlying liability, but is needed instead solely to establish the IRS' priority against third-

party creditors."); *In re Berg*, 188 B.R. at 618 (NFTL is filed to make "a tax lien … effective against third parties"). Here, the NFTL was filed with the Westchester County Clerk on June 8, 2011. (Docket No. 18-1). The fundamental purpose of an NFTL is to "give[] public notice to creditors." IRS Pub. 594 (Rev. 3-2017), 2017 WL 4240028, at *9 (Jan. 1, 2017). Since the NFTL is a public record, the Court will consider it in deciding the motion to dismiss.

## 2. The Exclusive Statutory Remedy for A Violation Of An Automatic Stay Is A Bankruptcy Proceeding for Damages

Without any support, Defendant contends that the remedy for an alleged willful IRS violation of the automatic stay in a bankruptcy matter is that a different statute of limitations provision should apply. The Court finds no basis in law to impose such a remedy. Consequently, Plaintiff's action was commenced within the applicable statute of limitations, and is timely.

While ordinary creditors may not file "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy code]," the IRS may make tax assessments during the pendency of the proceeding. 11 U.S.C. §§ 362(a)(6), (b)(9)(D);[6] *see In re Killmer*, 513 B.R. 41, 48-49 (Bankr. S.D.N.Y. 2014) ("Section 362(b)(9) excepts government units noticing and assessing tax deficiencies from the automatic stay."). It is undisputed here that the IRS did not violate the automatic stay by assessing tax penalties on April 21, 2011, during the pendency of the bankruptcy action. (Docket No. 18 at 3; Docket No. 19 at 3-4). However, the Bankruptcy Code prohibits "governmental units," including the IRS, from taking actions to collect upon the assessment during the automatic stay. *See* 11 U.S.C. §§ 362(a)(6), (b)(9)(D); *In re Payack*, No. 20-60345, 2020 WL 9211311, at *4

---

[6] However, "any tax lien that would otherwise attach to property of the estate by reason of such an assessment shall not take effect unless such tax is a debt of the debtor that will not be discharged in the case and such property or its proceeds are transferred out of the estate to, or otherwise revested in, the debtor." 11 U.S.C. § 362(b)(9)(D).

(Bankr. N.D.N.Y. Nov. 12, 2020) ("Section 362(b)(9) limits the impact of § 362(a)(6) in specific situations concerning tax liabilities. It does so by excepting from the automatic stay certain actions taken by taxing authorities designed to set (but not collect upon) the amount of taxes that may be due.") (internal citations omitted).

Defendant cites no support for the proposition that the NFTL would definitively be considered an unauthorized action to collect the assessed taxes—thus violating the automatic stay. Moreover, Defendant does not point to any statutory provision in the Internal Revenue Code or caselaw that establishes that the remedy for such violation would be to apply a different statute of limitations in a collection action brought in district court. Nor has the Court located any such authority.

However, the Court need not pass on the question of whether the NFTL violated the stay because the Internal Revenue Code provides an "exclusive" remedy for violations of the automatic stay. If a taxpayer believes the IRS has "willfully" violated an automatic stay, the "*exclusive remedy*" is for the "taxpayer [to] *petition the bankruptcy court* to recover damages against the United States." 26 U.S.C. § 7433(e)(1) (providing that the exclusive remedy is to petition the bankruptcy court for damages "[i]f, in connection with any collection of Federal tax with respect to a taxpayer, [the IRS] willfully violates any provision of section 362 (relating to automatic stay)…of title 11, United States Code") (emphasis added); *see Manchanda v. Internal Revenue Serv.*, 20-CV-10745 (ALC), 2022 WL 902312, at *4 (S.D.N.Y. Mar. 28, 2022) (noting 26 U.S.C. § 7433(e) provides the "exclusive remedy" for claims that the IRS willfully violated the automatic stay and dismissing claims brought under 26 U.S.C. § 7433(a) and (e) where plaintiff "completely ignore[d] the statutorily required manner and form in which section 7433 administrative claims are to be filed"); *Michaelesco v. United States*, 410 B.R. 129, 131 (D.

Conn. 2009), *aff'd*, 383 F. App'x 42 (2d Cir. 2010) (dismissing case brought in district court claiming the IRS violated automatic stay via unlawful collection because the "issues that [plaintiff] ha[d] raised must be considered by the bankruptcy court rather than the district court pursuant to 26 U.S.C. § 7433(e)(1)"). Furthermore, the Bankruptcy Code, in turn, specifies that the relief for a willful violation of an automatic stay is money damages, including attorney's fees and costs, where appropriate. *See* 11 U.S.C. § 362(k); *see also Pierre v. Aurora Comm. Corp.*, 620 B.R. 210, 219 (S.D.N.Y. 2020).

Accordingly, Defendant's claim that the IRS violated the automatic stay[7] should have been brought in the bankruptcy court in the first instance. *See Manchanda*, 2022 WL 902312, at *4; 26 U.S.C. § 7433(e)(1). However, Defendant failed to do so, and is likely now time-barred from doing so. In any event, since there is no support for the proposition that filing a NFTL during the pendency of the automatic stay under 11 U.S.C. § 362(a)(6) nullifies the tolling provision set out in 26 U.S.C. § 6503, the Court finds that the instant collection action was timely filed.

---

[7] To the extent Defendant is arguing that Plaintiff should not reap the benefits of the Internal Revenue Code's tolling provisions because "[t]he IRS clearly did not believe they were stayed," because it filed the NFTL and "[t]herefore, they cannot now, when they've exceeded the statute of limitations, claim that they believed they were stayed to gain extra time," (Docket No. 20 at 1), this argument fails because Defendant has offered nothing in support of it, nor can the Court find any support for it. The tolling provisions have no requisite *mens rea*, and, therefore, the IRS's "belie[f]" is irrelevant to the tolling of the statute of limitations.

-12-

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss and for judgment on the pleadings is denied.  The Clerk is respectfully requested to terminate the pending motion (Docket No. 17).

Dated:    January 27, 2023
          White Plains, New York

                                           **SO ORDERED:**

                                           JUDITH C. McCARTHY
                                           United States Magistrate Judge