UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

        -against-

PHILIP COLASUONNO,

                Defendant.

-------------------------------------------------------------X

**OPINION AND ORDER**

21 Civ. 10877 (JCM)

Plaintiff the United States of America ("Plaintiff") filed this action on December 20, 2021, pursuant to 26 U.S.C. § 7401, seeking a judgment for unpaid tax assessments against Defendant Philip Colasuonno ("Defendant"). (Docket No. 1).[1] Currently before the Court is Plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Motion"). (Docket Nos. 37, 40). Defendant opposed the Motion ("Opp."), (Docket No. 44),[2] and Plaintiff replied, (Docket No. 46). For the reasons set forth herein, the Motion is granted.

I.      **BACKGROUND**

The following facts are taken from Plaintiff's Statement of Material Facts submitted pursuant to Local Civil Rule 56.1 of the United States District Courts for the Southern and Eastern Districts of New York ("Pl. 56.1"), (Docket No. 41), Defendant's Response to Plaintiff's Local Civil Rule 56.1 Statement ("Def. 56.1 Resp."), (Docket No. 45), and the affidavits and

---

[1] This action is before the undersigned for all purposes on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Docket No. 15).

[2] Initially, Defendant submitted an unsigned memorandum of law in opposition to the Motion. (Docket No. 44). As a result, on March 5, 2024, the Court ordered him to refile an executed version, (Docket No. 47), which was done on March 7, 2024. (Docket No. 48).

exhibits submitted by the parties in support thereof.[3]   The following facts are construed in the light most favorable to Defendant as the party opposing summary judgment. *See Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018).  Any disputes of material fact are noted.

Defendant owned one-third of a company called American Armored Car Ltd. ("American Armored"). (Pl. 56.1 ¶ 1).  As part owner of American Armored, Defendant was required to "collect, truthfully account for and remit to the United States federal income, federal Social Security, Medicare (pursuant to the Federal Insurance Contributions Act ("FICA")), and unemployment (pursuant to the Federal Unemployment Tax Act ("FUTA")), tax obligations from its employees' wages" (together, "trust fund taxes"). (*Id.* ¶ 2).  Defendant failed to collect, account for, and pay over the trust fund taxes for the quarterly tax periods ending in June 30, 2001; September 30, 2001; December 31, 2001; March 31, 2002; June 30, 2002; September 30, 2002; December 31, 2002; March 31, 2003; June 30, 2003; September 30, 2003; December 31, 2003; March 31, 2004; June 30, 2004; September 30, 2004; December 31, 2004; March 31, 2005; June 30, 2005; September 30, 2005; and December 31, 2005 (the "Relevant Period"). (*Id.*). While the parties dispute the degree to which Defendant was involved in the preparation of American Armored's tax returns, Defendant concedes that he failed to collect the trust fund taxes and "knew and allowed false 941 returns to be filed." (Def. 56.1 Resp. ¶¶ 1, 2, 3, 4).

As part of his effort to shield American Armored from tax liability, Defendant wrote checks for wages owed to his employees to another company called FJC Security Services Inc. ("FJC"). (Pl. 56.1 ¶ 5).  The deposited money was then withdrawn shortly thereafter and used to pay American Armored employees in cash. (*Id.*).  Defendant disputes that he "wrote the checks

---

[3] Specifically, Plaintiff submitted a Declaration from its attorney, Dana Walsh Kumar, attaching three exhibits, (Docket No. 38), as well as a declaration from Andrew Barone, a Revenue Office Advisor at the IRS, attaching three exhibits, (Docket No. 39).  Defendant did not submit any affidavits, affirmations, declarations or exhibits in opposition to the Motion.

made payable" to FJC but acknowledges "that he knew that such checks were written" and admits that the purpose of writing the checks was to avoid paying taxes on his employees' wages. (Def. 56.1 Resp. ¶¶ 5, 7).  As a result of his actions, Defendant pleaded guilty to a two-count Information, charging him with conspiracy to commit tax fraud in violation of 18 U.S.C. § 371, and aiding and assisting in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2). (Pl. 56.1 ¶ 6); *see also United States v. Colasuonno*, No. 07 Crim. 555 (AKH) (S.D.N.Y. June 18, 2007).

At his plea allocution, Defendant admitted that he, along with his co-owner and brother, Dominick, willfully filed false statements with the IRS and paid employees in cash, through FJC, to shield American Armored from tax liability and to avoid having to withhold and account for their FICA and FUTA obligations. (*Id.* ¶¶ 7-8).  He was sentenced on July 19, 2007, to time-served on count one of the Information and five years' probation on count two of the Information, to run concurrently with a five-year term of supervised release on the first count. *Colasuonno*, No. 07 Crim. 555, Docket No. 7.  In addition, Defendant was ordered to pay $781,467.00 in restitution. *Id.*  Subsequently, Defendant violated the terms of his probation by failing to make a good faith effort to pay restitution, and was resentenced on March 17, 2011, to a four-month term of imprisonment. *Id.* at Docket No. 31.[4]

On May 17, 2010, the IRS issued a notice in which it proposed to assess Defendant with a $1,768,196.20 penalty in connection with his failure to pay the trust fund taxes that American Armored owed. (Docket No. 40 at 8).  Defendant appealed that decision to the IRS's Independent Office of Appeals on June 4, 2010. (*Id.* at 8-9).  The appeal was initially successful, and the IRS relieved him of the proposed assessment on October 19, 2010. (Pl. 56.1 ¶ 16).

---

[4] Between Defendant's initial sentence and resentence he filed for bankruptcy. (Pl. 56.1 ¶ 9) ("On June 24, 2009, Colasuonno filed a petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.").

However, the IRS subsequently reversed that decision, determining that the statute of limitations had not expired, as it initially believed, and reassessed Defendant, on April 21, 2011, with a $1,742,410.30 penalty for "deficiencies in the payment of trust fund taxes for the Relevant Tax Period" with interest and penalties continuing to accrue. (Pl. 56.1 ¶¶ 10, 11).  As of May 29, 2023, Defendant owes the IRS a total of $2,688,333.60 for the Relevant Period (the "Assessment"). (Pl. 56.1 ¶¶ 12-15).  Defendant denies that the IRS's reversal of its prior decision to relieve him of the proposed assessment was in error, arguing that the statute of limitations did expire, and that he "lacks sufficient information to form a belief" as to the truth of the amount assessed. (Def. 56.1 Resp. ¶¶ 13-17).

Plaintiff filed this action on December 20, 2021. (Docket No. 1).  The Complaint states a single claim for relief: that Defendant failed to pay the Assessment issued on April 21, 2011, pursuant to 26 U.S.C. § 6682(a), for not collecting and remitting trust fund taxes.  Defendant answered the Complaint on February 16, 2022, (Docket No. 7), and moved for judgment on the pleadings on July 1, 2022, (Docket No. 17), which was denied on January 27, 2023, (Docket No. 21).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citations and internal quotations omitted).  "A fact is material if it might affect the outcome of the suit under the governing law." *Id.*

"In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, the non-moving party cannot defeat a motion for summary judgment simply by relying on unsupported assertions or conclusory statements, *see Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995), and must do more than demonstrate the existence of "some metaphysical doubt as to the material facts," *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Rather, to defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467–68 (S.D.N.Y. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

In the Southern District of New York, the party moving for summary judgment must submit a short and concise statement of material facts it contends are undisputed, and supported by evidence that would be admissible at trial. Local Civ. R. 56.1.  The party opposing summary judgment must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c). Merely stating that the non-moving party "lacks sufficient information to form a belief as to the truth of this statement" is "not [a] sufficient response[] under Local Rule 56.1 when [] the

[moving party] has cited to admissible evidence in support of its factual assertions." *Schwartz v. Allstate Ins. Co.*, 20-CV-79 (JMA)(JMW), 2023 WL 2742059, at \*1 (E.D.N.Y. Mar. 31, 2023); *accord Antoine v. LaRotonda*, 16-CV-6056 (CS), 2019 WL 3337900, at \*1 (S.D.N.Y. July 25, 2019) (same).

## III.   DISCUSSION

For Defendant to be liable under 26 U.S.C. § 6672(a), Plaintiff must establish that he "was a 'responsible person' for collection" of the trust fund taxes the Assessment is based upon, and that he "'willfully' failed to comply with section 7501(a)."[5] *Winter v. United States*, 196 F.3d 339, 344 (2d Cir. 1999).  Plaintiff argues that summary judgment should be granted because Defendant concedes he was a "responsible person," (Def. 56.1 Resp. ¶ 3), and he has neither satisfied the Assessment nor raised a triable issue of fact as to its legal validity and sum. (Docket Nos. 40 at 11-15, 46 at 3-5).  In response, Defendant contends that there are genuine disputes of fact as to whether: (1) the Assessment is correctly calculated; (2) a portion of the Assessment may have already been paid by Defendant's brother, who was also charged and ordered to pay restitution for the same misconduct; and (3) reducing the Assessment to judgment will have the effect of extending the statute of limitations on the restitution amount ordered in Defendant's criminal case. (Opp. at 4-5).

First, Defendant has failed to raise a triable issue of fact as to the amount of the Assessment.  The Second Circuit has held that "[a] government tax assessment is generally presumed to be correct, and a taxpayer who contests such an assessment bears the burden of

---

[5] 26 U.S.C. § 7501(a) states: "[w]henever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States. The amount of such fund shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations (including penalties) as are applicable with respect to the taxes from which such fund arose."

proving that it is not." *Papandon v. U.S. ex rel. Perler*, 350 F. App'x 491, 493 (2d Cir. 2009); *see also United States v. Schwartz*, 615 F. Supp. 3d 184, 188 (E.D.N.Y. 2022) ("[i]n an action to reduce an assessment to judgment, the burden is [] on the taxpayer to prove the invalidity of the tax assessment") (internal quotation omitted); *United States v. Sweeny*, 418 F. Supp. 2d 492, 496 (S.D.N.Y. 2006) ("[t]he burden is on the defendant to prove the invalidity of the tax assessment") (citing *Pizzarello v. United States*, 408 F.2d 579, 583 (2d Cir. 1969)).  Thus, once the government proves the existence of an outstanding tax assessment, there is a "prima facie case of liability, such that the Government is entitled to have the assessment reduced to judgment unless the taxpayer overcomes the presumption by the IRS that the assessment is correct." *Sweeny*, 418 F. Supp. 2d at 496 (citations and internal quotations omitted).  To overcome this presumption, the defendant "must point to specific evidence that demonstrates the proper amount of his tax liability.  Mere conclusory denials and bald assertions . . . are insufficient to avoid summary judgment." *United States v. Graham*, No. 13-CV-1288 (WFK)(VMS), 2015 WL 1003458, at *3 (E.D.N.Y. Mar. 6, 2015) (citations and internal quotations omitted).  Where "the taxpayers have not even offered a theory, let alone evidence to support it, that shows any factual issue as to whether the Government's tax calculation was correct," summary judgment must be granted. *Papandon v. United States*, No. 99 Civ. 7860 (BMC), 2008 WL 3981580, at *1 (E.D.N.Y. July 7, 2008), *aff'd*, 408 F.2d 579 (2d Cir. 2006).

Here, Plaintiff submitted sworn testimony from an IRS Revenue Office Advisor confirming that Defendant failed to pay taxes legally owed and that, as a result, the IRS issued an assessment of penalties and interest on April 21, 2011. (Docket No. 39 at 2).  The Revenue Office Advisor attached Defendant's account transcripts for the Relevant Period, as well as the IRS's letter to Defendant informing him of the proposed Assessment in support of his testimony.

(Docket No. 39-1, 39-2).  Therefore, the Assessment is presumed to be correct and Defendant

"must not only show that the assessment is incorrect, but [he] must also prove the correct amount

of the tax." *Sweeny*, 418 F. Supp. 2d at 496.  Defendant does neither.  He submits no evidence in

support of his contention that the amount due is incorrect, nor does he indicate the proper amount

of his tax liability.  Instead, Defendant merely states that Plaintiff's Motion should be denied

because there is "no explanation as to what interest rate was charged, what schedule it was

compounded on, and what the other additions are," so he cannot "determine if the interest and

fee calculations are correct." (Opp. at 4-6).  However, general allegations of incorrectness are

insufficient to carry his burden. *See Schwartz*, 615 F. Supp. 3d at 189 ("general objections to the

forms of documentation plaintiff has submitted, the different amounts it has requested, and the

level of detail it has provided . . . are not enough to overcome the presumption that the IRS's

assessment is correct, and they cannot defeat plaintiff's motion for summary judgment")

(collecting cases).  Therefore, Defendant's contention that there is a genuine issue of material

fact as to the amount owed fails as a matter of law.

Second, Defendant's argument that his brother may have already paid a portion of the

amount due and, thus, there is a factual dispute as to the amount outstanding is not supported by

the record.  While it is true that the government may not recover twice for the same penalty, *see*

*United States v. Helmsley*, 941 F.2d 71, 102 (2d Cir. 1991) ("it is self-evident that any amount

paid as restitution for taxes owed must be deducted from any judgment entered for unpaid taxes

in [] a civil proceeding"), Defendant has not submitted any evidence proving that a portion of the

restitution has actually been paid by his brother.  Nor has the government claimed that it would

refuse to credit any hypothetical payments made by Defendant's brother towards the overall

outstanding tax assessment.  Thus, this argument lacks merit and fails to raise a triable issue of

fact. *See, e.g.*, *Papandon*, 2008 WL 3981580, at *1 (granting summary judgment against taxpayer who's "arguments in opposition to summary judgment consist of non-sequiturs").

Defendant's related argument, that the IRS is improperly targeting him to recover on the tax assessment and not his brother, who "also pleaded guilty and was deemed a responsible person," (Opp. at 4), is equally lacking. In *Winter*, the Second Circuit held that the IRS "may not utilize invidious or legally impermissible criteria in singling out those responsible persons from whom it will collect." 196 F.3d at 339. However, the Circuit then affirmed the district court's decision to enter judgment against the defendants because they had "made no allegations and introduced no evidence that the IRS utilized invidious criteria when it abated the penalty originally assessed against [defendants' co-owner] but declined to abate the penalty against them." *Id.* at 350. The same holds true here. Defendant has not submitted any evidence that the IRS is improperly targeting him or that it "used invidious criteria" in choosing to file suit against him to recover on the Assessment. Thus, this argument fails as well.

Finally, Defendant's assertion that the Court should not reduce the Assessment to judgment because doing so would have the effect of extending the statute of limitations on his restitution obligations in the criminal action against him is without merit. "The Government's option of pursuing both criminal and civil proceedings in tax fraud cases is well established." *United States v. Adams*, No. 3:21-CV-01140 (VAB), 2022 WL 4054827, at *3 (D. Conn. Sept. 2, 2022) (collecting cases). Indeed, even where a criminal defendant pays restitution for tax-related offenses, unless his plea agreement "specifically preclude[s] the IRS from assessing additional taxes, a civil assessment may follow." *United States v. Rabkin*, 315 F.R.D. 159, 163 (E.D.N.Y. 2016). Here, Defendant does not argue that his plea agreement forecloses the IRS from assessing the penalty at issue in this case, therefore, regardless of the statute of limitation on the

criminal restitution ordered, the law permits the IRS to maintain this action.  Moreover,

Defendant's contention, if accepted, would lead to perverse results, such as incentivizing

defendants under criminal indictment for tax-related offenses to withhold making payments to

the IRS knowing they can avoid the debt and any associated penalties altogether once the clock

on their restitution order expires.  The Court will not countenance such gamesmanship.[6]

Accordingly, Defendant has failed to raise a genuine issue of material fact to defeat

Plaintiff's Motion.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted.  The

Clerk is respectfully directed to terminate the pending motion (Docket No. 37), enter judgment

for Plaintiff, and close the case.

Dated: March 21, 2024
        White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge

---

[6] Defendant's claim, in the final paragraph of his brief, that he "should have been able to rely on" the IRS's initial October 19, 2010 determination that he had no further tax liability, (Opp. at 5), is unavailing. "If the statute of limitations has not run, the IRS may simply make a new assessment of the tax liability that had been abated." *Crompton-Richmond Co. v. United States*, 311 F. Supp. 1184, 1186 n.2 (S.D.N.Y. 1970); *accord Purser Truck Sales, Inc. v. United States*, Civil Action No. 5:07-CV-15 (CAR), 2008 WL 6053201, at *1 (M.D. Ga. Dec. 5, 2008) ("[n]othing in the Internal Revenue Code or in the accompanying regulations provides that the IRS cannot change its mind or correct an erroneous assessment"); *Est. of Wilbanks v. Comm'r*, 61 T.C.M. (CCH) 1779 (1991) ("[s]ince the statute of limitations had not run, it was within" the IRS's authority to make a "supplemental assessment" where it learned there was "no reasonable explanation for [the taxpayer's] late filing of the application for extension of time or the return"), *aff'd sub nom. Est. of Wilbanks*, 953 F.2d 651 (11th Cir. 1992).